UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------- X

TKAI GREEN,

Plaintiff,

-against-

CITY OF NEW YORK; Commissioner DORA B.
SCHRIRO; Chief of Department LARRY W. DAVIS, SR.;
Deputy Commissioner FLORENCE FINKLE; Supervising
Warden of Division II ARTHUR OLIVARI; Warden
VANESSA SINGLETON; Officer SAUNDERS; Officer
BROWN; JOHN DOES # 1-10,

Defendants.

-------------------------------------------------------------------------------- X

**COMPLAINT AND
JURY DEMAND**

**ECF CASE**

**10 Civ. 8214 (PKC) (FM)**

## PRELIMINARY STATEMENT

1.      This is a civil rights action brought by plaintiff Tkai Green ("Ms. Green" or "plaintiff") for damages pursuant to 42 U.S.C. § 1983.  While in the custody of the New York City Department of Correction ("DOC" or "the Department"), and detained at the Rose M. Singer Center on Rikers Island ("RMSC"), Ms. Green was unlawfully strip-searched and unlawfully videotaped by a male officer of the Department during the strip-search.

2.      The Department and its supervisors are, and have been, aware that Department staff members persistently flout Departmental rules and disregard the Constitutional rights of the inmates over whom they are supposed to exercise care, custody and control.  The Department and its supervisors have consistently, for years, failed to take meaningful and effective steps to curb the staff from committing these violations.  The incident involving Ms. Green is part of a pattern of incidents where male DOC officers have disregarded their constitutional duty to the vulnerable female detainees under their control, as evidenced by a recent Village Voice article regarding an inmate who became pregnant while detained at RMSC, the same facility in which the unconstitutional conduct

described herein occurred.[1]  As a result of this egregious violation, Ms. Green suffered significant emotional and psychological injuries, including, without limitation, debilitating shock, fright and fear, nightmares, difficulty sleeping, and a sustained loss of appetite.

3.      Ms. Green now seeks redress against the DOC employees who violated her rights and failed to intervene in the violation of her privacy, their supervisors and the City of New York.

## JURISDICTION AND VENUE

4.      This action arises under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

5.      The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331 and 1343(a)(3)-(4).

6.      The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

7.      Plaintiff demands a trial by jury in this action.

## PARTIES

8.      Tkai Green resided at Rikers Island in Bronx County at the time these events occurred.  At the time of the violation of her privacy, Ms. Green was detained at RMSC.

9.      Defendant City of New York ("City") is a municipal corporation, which, through its DOC, operates a number of detention jails.  The Department, through its senior officials at the central office, in each facility, and in its specialized units, promulgates and implements policies,

---

[1] *See* Elizabeth Dwoskin, *Inmate Gets Pregnant in Rikers, Sparking Investigation*, THE VILLAGE VOICE BLOG, Apr. 29, 2010 @ 5:22PM; http://blogs.villagevoice.com/runninscared/2010/04/inmate_gets_pre.php (visited October 28, 2010).

2

including those with respect to the strip-searching of inmates by uniformed staff, both at intake and during institutional and random searches and when inmates go to and from Court, religious services and visits as well as the mechanism for tracking the number of searches conducted and the basis for each search.  In addition, senior officials in the Department are aware of and tolerate certain practices by subordinate employees in the jails, including those that are inconsistent with formal policy. These practices, because they are widespread, long-standing, and deeply embedded in the culture of the agency, constitute unwritten Department policies or customs. The Department is also responsible for the appointment, training, supervision, and conduct of all DOC personnel, including the defendants referenced herein.

10.     At all times relevant hereto, Dora B. Schriro was the Commissioner of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. On information and belief, defendant Schriro, as Commissioner of DOC, was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the training, supervision, and conduct of all DOC personnel, including the defendants referenced herein. As Commissioner, defendant Schriro was also responsible for the care, custody, and control of all inmates housed in the Department's jails. As Commissioner, Schriro was provided on a regular basis with reports of strip searches conducted throughout the jails. In addition, at all relevant times, defendant Schriro was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obey the laws of the United States and of the State of New York as well as all relevant consent decrees and injunctions.  Defendant Schriro is sued in her individual and official capacity.

11.     At all times relevant hereto, Larry W. Davis, Sr. was the Chief of Department of DOC, acting in the capacity of agent, servant, and employee of defendant City, within the scope of

3

his employment as such, and acting under color of state law. As Chief of Department, he is the highest-ranking uniformed member of the department, and is responsible for the supervision, oversight, and discipline of the uniformed security staff in all the Department jails. He is also responsible for the care, custody, and control of all inmates in the Department jails. As Chief of Department, Davis is provided on a regular basis with reports of strip searches conducted throughout the jails. Defendant Davis is sued in his individual capacity.

12.    At all times relevant hereto, Florence Finkle was the Deputy Commissioner of the Department, Investigation Division. As Deputy Commissioner, her responsibilities include supervising the investigation of any and all incidents in which any employee of the Department conducted an unlawful strip-search or a male officer was present during the strip-search of a female inmate, and recommending Department discipline against staff believed to have violated Department policies and rules. Defendant Finkle is provided on a regular basis with reports of strip-searches conducted throughout the jails. Defendant Finkle is sued in her individual and official capacity.

13.    At all times relevant hereto, Arthur Olivari was the Supervising Warden of Division II. As the Supervising Warden of Division II, his responsibilities included supervision of wardens, correction officers, captains, and other supervisors with respect to the care, custody and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including Department Directives and Orders governing the use of strip-searches and the Board of Correction Minimum Standards. As supervising warden, defendant Olivari is provided on a regular basis with reports of strip-searches conducted throughout the jails. Defendant Olivari is sued in his individual capacity.

14.     At all times relevant hereto, Vanessa Singleton was the Warden of RMSC. As the facility warden, her responsibilities included supervision of correction officers, captains, and other supervisors with respect to the care, custody and control of inmates confined in the jail. These responsibilities were and are required to be carried out in a manner consistent with the legal mandates that govern the operation of DOC and its jails, including Department Directives and Orders governing the use of strip-searches, the Board of Correction Minimum Standards and all relevant consent decrees and injunctions. As warden, defendant Singleton is provided on a regular basis with reports of strip-searches. Defendant Singleton is sued in her individual capacity.

15.     At all times relevant hereto, Officer Saunders, whose first name and shield number plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, was an officer within the DOC and assigned to RMSC at Rikers Island, acting in the capacity of agent, servant, and employee of defendant City, within the scope of his employment as such, and acting under color of state law. Defendant Saunders worked at Rikers Island at the time of the incident alleged herein and is believed to have been the male officer who videotaped plaintiff while she was being strip-searched inside her cell. Defendant Saunders is sued in his individual capacity.

16.     At all times relevant hereto, Officer Brown, whose first name and shield number plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, was an officer within the DOC and assigned to RMSC at Rikers Island, acting in the capacity of agent, servant, and employee of defendant City, within the scope of her employment as such, and acting under color of state law. Defendant Brown worked at Rikers Island at the time of the incident alleged herein and is believed to have been the female officer who conducted the strip-search of plaintiff that was videotaped by Officer Saunders. Defendant Brown is sued in her individual capacity.

17.     At all times relevant hereto, John Does # 1-10, whose actual names and shield numbers plaintiff has been unable to ascertain notwithstanding reasonable efforts to do so, but who are sued herein by the fictitious designation "John Doe," were officers, captains, assistant deputy wardens and/or deputy wardens of DOC, acting in the capacity of agents, servants, and employees of defendant City, within the scope of their employment as such, and acting under color of state law. On information and belief, defendants John Does # 1-10 worked at RMSC at Rikers Island on February 4, 2010, and participated, or witnessed and failed to intervene in the unlawful strip-search and videotaping of plaintiff.  Defendants John Does # 1-10 are sued in their individual capacities.

18.     John Does # 1-10 are collectively referred to as "Doe Defendants"; defendants Schriro, Davis, Finkle, Olivari and Singleton are collectively referred to as "Supervisory Defendants." Doe Defendants, defendant Saunders, defendant Brown, and the Supervisory Defendants are collectively referred to as the "Individual Defendants."

## STATEMENT OF FACTS

**New York City's Jails: A History of Abuse**

19.     For decades, through Department reports and civil litigation, DOC has been aware of the routine, unconstitutional use of strip-searches by staff at individual facilities in the large, multi-jail New York City Department of Correction.[2]

20.     Additionally, through DOC's elaborate reporting system, the Supervisory Defendants Schriro, Davis, Finkle, Olivari and Singleton were aware of the pattern of a large number of incidents involving the use of strip-searches that served no legitimate penological interest, were unnecessary, were designed to be punitive in nature and were conducted for the

---

[2] *See, e.g., McBean v. City of New York, et. al.,* 02 CV 5426 (JGK) (THK) (class-action lawsuit involving the wrongful strip-search of pre-trial detainees)*; Alicia Williams v. City of New York, et. al.,* 07 CV 11046 (PKC) (DF) (strip-search of a visitor).

perverse sexual gratification of DOC staff members.  The Supervisory Defendants were aware that these violations by staff members resulted in serious emotional and psychological injuries to inmates but failed to take sufficient steps to curb these abuses.

21.    As of the time Ms. Green's privacy was violated, the Supervisory Defendants were aware of the unwillingness of the Department to investigate adequately and impose meaningful discipline against DOC staff members who conduct unnecessary and unconstitutional strip searches of inmates, who violate the privacy rights of inmates, or who fail to accurately and honestly report these violations.

22.    Through all these cases and Department reports, DOC and its supervisors have been made aware of the widespread practice by DOC staff members of using unconstitutional and/or unnecessary strip-searches to injure, embarrass and/or humiliate inmates. They have also been made aware of the failures of DOC's Investigation Division to adequately investigate allegations of misconduct and of the *de facto* refusal of the Department to bring effective disciplinary charges against its officers to promote institutional reform and protect the privacy interests of prisoners confined in DOC custody.

23.    The Department and the Supervisory Defendants cannot credibly contend that they are unaware of the pattern of abuse that occurs with regularity in New York City jails and the failure of the Department to take sufficient measures to investigate and discipline this abuse.

24.    The Department has not taken sufficient steps to curb the abuse that occurs on a daily basis in New York City jails. Indeed, it allows that abuse to persist through inadequate investigations of allegations of misconduct and the failure to discipline officers in the face of obvious wrongdoing.

**The February 4, 2010 Videotaped Strip-Search of Tkai Green**

25.    On or about February 4, 2010, Tkai Green was a pre-trial detainee in the "45 Upper" housing area at the RMSC facility.

26.    At approximately 3:00 p.m., a search of Ms. Green's housing area was conducted.

27.    After Ms. Green's cell was searched, Officer Brown ordered her to strip naked inside of her cell.

28.    Once she was naked, Officer Brown ordered Ms. Green to turn around and squat.

29.    After Ms. Green complied with the order, she stood up and turned back around.

30.    As she turned around, Ms. Green observed Officer Saunders in the doorway of her cell, filming her with a handheld video camera.

31.    As he stood filming Ms. Green, Officer Saunders was smirking and laughing at her.

32.    Ms. Green was shocked and terrified and began hysterically crying.

33.    Ms. Green was subsequently transferred to a different housing area and Officer Saunders was one of the assigned escort officers.

34.    Ms. Green felt extremely threatened by Officer Saunders' presence and feared for her personal safety.

35.    On her way to court on February 8, 2010, Ms. Green filed a grievance concerning the officers' conduct.

36.    At no time did the officers have any legitimate penological interest to justify the strip-searching of Ms. Green.  The officers did not have individualized reasonable suspicion to suspect that she was concealing contraband on her person and her search was conducted to achieve

collateral unlawful objectives including subjecting her to ridicule and humiliation and providing the officers with perverse titillation, sexual satisfaction and amusement.  There was not and could not have been any lawful reason for a male officer to be present when Ms. Green or any female inmate was naked, nor could there have been any lawful reason for anyone to videotape the strip-search of any DOC inmate. Officers Saunders and Brown and John Does # 1 - 10 acted sadistically and maliciously and demonstrated deliberate indifference toward Ms. Green's rights and physical and emotional well-being.

<u>**FIRST CLAIM FOR RELIEF**</u>
**42 U.S.C. § 1983/Fourth, Fifth and Fourteenth Amendments**
**(Against All Individual Defendants)**

37.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

38.     By reason of the foregoing, and by subjecting plaintiff to a strip-search that was gratuitous, excessive, unnecessary, sadistic, solely punitive in nature, designed to humiliate and embarrass plaintiff and designed to titillate and amuse Department staff, and by failing to prevent the strip-search from occurring or from failing to prevent the videotaping of the strip-search, the Individual Defendants deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution to be free from gratuitous and unlawful invasions of her privacy.

39.     Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employments as DOC officers and employees. Said acts by defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. These defendants acted willfully, knowingly, and with the specific intent to

deprive plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

40.     Defendants Schriro, Davis, Finkle, Olivari and Singleton knew that the pattern of violation of privacy rights described above existed in the City jails prior to and including the time of the violations of plaintiff's rights.  Their failure to take measures to curb this pattern of violations constitutes acquiescence in the known unlawful behavior of their subordinates. The prevalence of these practices and general knowledge of their existence at the time of plaintiff's violation of her rights, and the failure of these defendants to take remedial action despite the fact that the misuse of strip-searches in City jails had been persistently brought to their attention, constitutes deliberate indifference to the rights and safety of the inmates in their care and custody, including plaintiff. These defendants' conduct has been a substantial factor in the continuation of such violations and a proximate cause of the constitutional violations alleged in this complaint.

41.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983/Fourth, Fifth and Fourteenth Amendments
### (Against Defendant City)

42.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

43.     Defendant City, through DOC, and acting under the pretense and color of law, permitted, tolerated and was deliberately indifferent to a pattern and practice of unlawful strip-searches and the violation of inmates' privacy rights by DOC staff at the time of plaintiff's strip-search. This widespread tolerance of correction officer abuse of prisoners constituted a municipal policy, practice, or custom and led to the violation of plaintiff's rights.

44.    By permitting, tolerating, and sanctioning a persistent and widespread policy, practice, and custom pursuant to which plaintiff was subjected to an unlawful strip-search, defendant City has deprived plaintiff of rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, secured by 42 U.S.C. § 1983, including, but not limited to, rights guaranteed under the Fourth, Fifth and Fourteenth Amendments to be free from unwarranted invasions of privacy.

45.    As a direct and proximate result of the policy, practice, and custom detailed above, plaintiff sustained the damages hereinbefore alleged.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiff respectfully requests judgment against defendants as follows:

(a)  Compensatory damages against all defendants, jointly and severally;

(b)  Punitive damages against the Individual Defendants, jointly and severally;

(c)  Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(d)  Such other and further relief as this Court deems just and proper.

DATED:    October 29, 2010
          New York, New York

HARVIS & SALEEM LLP

Afsaan Saleem
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
asaleem@harvisandsaleem.com

11